Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 8360 | DATE | Nov. 20, 2002 |
| CASE TITLE | Kathleen Romanowski   v   Lucent Technologies, Inc. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendant's motion for summary judgment is granted in its entirety. The Court's prior orders setting this case for trial and for a status report are vacated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| X | Notices mailed by judge's staff. | | NOV 22 2002 date docketed | |
| | Notified counsel by telephone. | | | 27 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | 02 NOV 21 AM 11:12 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KATHLEEN ROMANOWSKI, )
)
Plaintiff, )
) No. 01 C 8360
v. )
) Judge Robert W. Gettleman
LUCENT TECHNOLOGIES, INC., )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Kathleen Romanowski filed a two-count complaint against defendant Lucent Technologies, Inc. ("Lucent"), alleging, (1) sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000(e) et seq., and (2) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. After the close of discovery, defendant moved for summary judgment with respect to both counts of plaintiff's complaint, pursuant to Fed. R. Civ. P. 56. For the reasons discussed herein, the court grants defendant's motion.

## FACTS

Plaintiff was employed by defendant and its corporate predecessor, AT&T Corporation, Bell Laboratories Division, from approximately August 10, 1982, through March 12, 1999. During her tenure with defendant, plaintiff held clerical and administrative-type positions.

On November 1, 1996, John. C. Curtis hired plaintiff to work as a technical assistant in defendant's Optical Networking Group ("ONG"). As a technical assistant, plaintiff's duties included providing clerical and administrative support to ONG department members, such as making travel and meeting arrangements, database management, project management,

procurement and purchasing for the department. Curtis was plaintiff's direct supervisor from November 1, 1996, through July 1997, when he was promoted to ONG department head. Thereafter, Timothy Pearson was plaintiff's direct supervisor, until plaintiff's employment was terminated on March 12, 1999.

Plaintiff was a "nonrepresented occupational employee," which means that, according to Lucent's personnel guidelines, she was entitled to a formal performance appraisal review ("PAR") once a year. The personnel guidelines also encourage supervisors to provide informal feedback and documentation regarding an employee's performance on a regular basis.

For employees whose performance is less-than-acceptable or unsatisfactory, supervisors may utilize a "performance improvement plan" ("PIP"), which uses measurable performance objectives and goals, as well as intensified coaching and feedback, to raise performance to an acceptable level. The parties dispute, however, whether and under what circumstances the use of a PIP is discretionary with an employee's supervisor.

Defendant has submitted the affidavit of Diane Adams, a Human Resources Business Partner at Lucent, as well as the deposition testimony of Curtis, as evidence that "whether the circumstances warrant use of a PIP is within the discretion of the supervisor or manager involved, in consultation with his or her human resources business partner." Defendant contends, for example, that a PIP need not be used when documentation substantiates an employee's unsatisfactory performance over an extended period of time. Accordingly, defendant maintains that an employee may be terminated or demoted after demonstrating an unacceptable level of performance during the course of one year, without first implementing a PIP.

In response, plaintiff has submitted her own affidavit as an exhibit to "Plaintiff's Responsive Local Rule 56.1(a)(3) Statement of Responsive Material Facts," in which she claims that:

> [M]y understanding of Lucent's policies, procedures and guidelines indicated that when an employee's performance level hit an unsatisfactory rating, then as part of the performance review process the employee would be placed on a PIP and that the PIP would be mandatory. (Emphasis added.)

Plaintiff also attached human resources guidelines from Lucent's website, dated September 28, 1998, as an additional exhibit, presumably as evidence that use of a PIP is mandatory, rather than discretionary. Plaintiff does not identify specific text within the 13-page exhibit that purportedly stands for the proposition that PIP's were mandatory, however.

Moreover, plaintiff does not provide evidence that these guidelines were either operative at the time of her dismissal or binding upon ONG employees. Indeed, defendant has produced evidence that these guidelines did not actually apply to ONG. In his deposition, Curtis testified that the guidelines attached to the plaintiff's statement of facts were those of the "iON process," which he described as Lucent's "attempt to provide corporate-wide suggestions and guidelines for how they want the company run [from a human resources standpoint]." According to Curtis' testimony, at the time of the events giving rise to the instant dispute, the iON process was not applicable to ONG: "Each business was being run as its own business, with our own legal and our own HR.... In this time frame, the HR process was being controlled by – or the optical network group was controlled by Ian McKeown.... And that was not the iOn process." Plaintiff has not produced evidence to contradict Curtis' deposition testimony.

3

On November 18, 1996, shortly after joining ONG, plaintiff received a PAR from her former supervisor, Cheryl Kohn. In that PAR, Kohn identified several areas that needed improvement. Specifically, Kohn noted that plaintiff needed to improve her ability to organize and distribute materials for department meetings, as well as her knowledge of how to update the staff profile databases.

In September 1997, plaintiff received a PAR from Curtis, her new supervisor, and was rated as "satisfactory." Curtis testified in his deposition that he in fact had been disappointed with plaintiff's performance, but rated her as satisfactory to afford her the benefit of the doubt and avoid having her terminated at that time. For example, according to Curtis, plaintiff mishandled the room reservations and other logistical details of a major team meeting. In addition, Curtis testified that plaintiff mishandled travel arrangements and vouchering for himself and other department members, and also allowed her procurement card to be cancelled. At one point in her deposition, plaintiff corroborated Curtis' testimony with respect to the cancellation of the procurement card, stating that she "believes" it was cancelled. Later in the deposition, however, plaintiff testified that the procurement card was suspended, not cancelled.

In response to the instant motion, plaintiff has denied both that Curtis was displeased with her performance and that she allowed her procurement card to be cancelled. As evidence, she references her affidavit, in which she states, "I received little or no significant performance feedback in writing or verbally [from Curtis]."

Plaintiff's next formal PAR was conducted on-line on September 18, 1998, by Pearson. Although the PAR indicated that plaintiff handled short-term projects well, her supervisor noted that:

4

> Katie has had difficulty organizing, planning, executing and following up on assignments, which have schedules, coordination, and follow-up.... Katie's workload has diminished over the year in terms of technical support primarily because people avoid giving her work and because her attention to detail needs to be improved.... [I]t is questionable if she regularly completes a full 8 hours of work each day given her late arrival, long lunches, and easy distraction.

In conclusion, Pearson noted that "Katie's performance needs improvement and will be monitored much closer."

Plaintiff received a written copy of this evaluation, although she states in her affidavit that this computerized evaluation "did not conform to the requirements of Lucent's policies, procedures and guidelines." Again, however, plaintiff does not point to particular provisions of the guidelines that would bolster this contention, and has not demonstrated that any such provisions would necessarily apply to ONG.

Plaintiff met with Curtis on October 29, 1998, to discuss her performance. The parties agree that, at this meeting, Curtis informed plaintiff that her performance remained unacceptable and needed immediate improvement. Moreover, according to Curtis, he raised specific examples of plaintiff's poor performance, such as her failure to purchase gift checks and resolve issues with her procurement card. Plaintiff acknowledged in her deposition that she was unable to purchase gift checks because her procurement card had been suspended, but disputes Curtis' characterization of both the content and tenor of the meeting.

According to plaintiff, she was not allowed to speak and was "told to shut up and sit down" by Curtis. In her affidavit, she stated in pertinent part:

> [Curtis] would not allow me to explain the reasons why certain work items were incomplete or unattended. He was unhappy with my work demeanor, periodic crying and my inattention to details and schedules. I tried to explain that these areas of my performance were being affected adversely by my depression. I had been medically

5

diagnosed as being clinically depressed. When I attempted to explain my condition Curtis, in a loud voice with angry demeanor, ordered me to stop making excuses and indicated that I was to perform my duties with 100% accuracy or be prepared for termination..... [M]y performance was minutely scrutinized thereafter by Curtis and Pearson. I was criticized for short work days, long lunches, too many personal telephone calls, and other nit-picky items. I realized that my performance was being scrutinized and that the method was abrupt and caused stress that exacerbated my depression.

In her deposition, plaintiff further testified that "I believe I was discriminated against for my disability because my supervisor would not accommodate my request for him to stop stressing me out." Curtis denies knowing about plaintiff's depression at any time prior to her ultimate termination.

Defendant references several meetings in December 1999 regarding plaintiff's continued performance issues.[1] Notwithstanding her denial that these meetings took place, plaintiff admits that "the December meetings primarily focused on repeated mistakes and errors that [plaintiff] made in submitting travel vouchers for certain department members' travel arrangements."

Beginning in April 1998, plaintiff had received statements from American Express indicating that her payments were past due and her account was in jeopardy of being cancelled. On March 11, 1999, plaintiff informed Pearson that she was unable to make an accounting for the $400 balance on her American Express card. At a March 12, 1999, meeting, Curtis terminated plaintiff's employment.

---

[1] These meetings, in addition to other conversations between plaintiff, Curtis, and Pearson, were documented in memoranda to plaintiff's personnel file. Plaintiff has testified that, prior to the instant litigation, she was unaware of any memoranda that chronicled her supervisors' criticisms of her performance. The court notes that the memoranda, which were not signed by plaintiff, are best characterized as hearsay insofar as they purport to establish what conversations did or did not take place between plaintiff and her supervisors. Accordingly, with respect to the instant motion for summary judgment, the court does not consider the memoranda for the truth of the matters stated therein. See Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995).

Plaintiff has identified two male colleagues, Mark Klein and Absalom Sturdivant, whom she claims were similarly situated, yet treated more favorably than she. Klein worked as a clerical employee in another department,[2] and did not have the same supervisor as plaintiff, but received a PIP prior to his termination. Sturdivant, an engineer, worked within the ONG and was supervised by Pearson. Sturdivant never received a PIP and was terminated for job abandonment after missing several consecutive days of work.

Although plaintiff has not provided any evidence regarding the scope and history of her depression, defendant did elicit the following information from plaintiff at her deposition:

> Q: This depression, did it substantially limit your performance of any of your major life activities?
> A: Not as far as my work life went, no.
> ...
> Q: Are there any jobs at Lucent that your depression prevented you from holding?
> A: No.
> Q: So you couldn't say that there was any class or range of jobs that you were not able to work?
> A: I was not able to do an engineering task because I'm not an engineer, but as far as the administrative functions, I was able to perform the tasks that were given to me.
> ...
> Q: I'm talking about jobs that you were unable to do because of your depression.
> A: There were no jobs like that.
> Q: So you could perform the central functions of your job with or without any accommodation?
> A: I was able to perform my job, to the best of my ability as it was presented to me, by the different positions that I had, yes, yes.

---

[2] Notwithstanding her deposition testimony to the contrary, plaintiff asserts in her affidavit that Klein worked in her department. In the absence of a satisfactory explanation of this discrepancy, the court disregards plaintiff's retraction of her deposition testimony. See Russell v. Acme-Evans Co., 51 F.3d 64, 67-68 (7th Cir. 1995) ("Where deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy.").

7

Plaintiff further admitted that her depression does not affect her ability to walk, see, hear, speak, breathe, learn, work, shop, perform basic tasks, or care for herself and her son.

## ANALYSIS

Fed. R. Civ. P. 56(c) provides that summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In considering a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party, and gives the nonmoving party the benefit of all reasonable or justifiable inferences to be drawn from the facts. Rand v. C.F. Industries, Inc., 42 F.3d 1139, 1146 (7th Cir. 1994). Applying these standards to the instant dispute, the court concludes that defendant is entitled to summary judgment on both of plaintiff's claims.

The essence of plaintiff's ADA claim is that defendant discriminated against her because of her disability, depression. In its motion for summary judgment, defendant argues that plaintiff's deposition testimony unequivocally establishes that she is neither limited, nor perceived as being limited, in a major life function and therefore does not qualify as "disabled" under the ADA. In response, plaintiff asserts that although she may not have used the appropriate legal terminology, "the facts obviously indicate that the major life function affected by [plaintiff's] medical condition of depression was her cognitive ability to think and perform cognitive duties in as rapid of time frame as she did without her being affected by the disease." Considering the plain text of the ADA statute and implementing regulations, as well as plaintiff's own testimony, the court finds plaintiff's argument unavailing.

8

The ADA covers only qualified individuals with disabilities. See 42 U.S.C. § 12112(a). Under the ADA, an individual has a disability if she, (1) has a physical or mental impairment that substantially limits one or more major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Although severe depression can certainly qualify as a disability under the ADA, the complainant must still demonstrate that "her depression substantially limits her ability to perform a major life activity." Schneiker v. Fortis Insurance Co., 200 F.3d 1055, 1061 (7th Cir. 2000). (Emphasis in original.) Considering the record in the instant dispute, the court concludes that plaintiff does not qualify as a person with a disability under the ADA, and that defendant is entitled to summary judgment.

In her complaint, plaintiff does not specify which major life activity is limited by her depression. Moreover, in her deposition, plaintiff denies that her depression limits her in any of the major life activities enumerated above. In her response to the instant motion, plaintiff appears to make a last-ditch effort to salvage her ADA claim, asserting that she was cognitively impaired as a result of her depression and unable to perform the requirements of her job. When considered in light of plaintiff's unambiguous deposition testimony that her ability to work was not affected by her disability, however, plaintiff's new factual assertion is unpersuasive. Cf. Russell, 51 F.3d at 67 ("We have been highly critical of efforts to patch up a party's deposition with his own subsequent affidavit.").

9

Moreover, even if the court were to consider plaintiff's new assertion that her depression affected her ability to perform her job, Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S.Ct. 2139 (1999), would still compel the court to conclude that plaintiff is not a person with a disability, as defined under the ADA. In Sutton, the Supreme Court explained that "when the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs.'" Id., 527 U.S. 471, 119 S.Ct. at 2151. See also 29 C.F.R. § 1630.2(j)(3)(i). Plaintiff has not produced any evidence whatsoever that would satisfy this requirement.

At most, the record in the instant dispute suggests that plaintiff's inability to perform her job stemmed from her tenuous working relationship with Pearson and Curtis, rather than a disabling condition. Without denigrating the seriousness of plaintiff's condition, the court notes that such personality conflicts, even those that aggravate depression, do not establish that an employee is disabled, so long as the employee could perform the same job under a different supervisor. Schneiker, 200 F.3d at 1062.

Moreover, plaintiff has not adduced any evidence that either Curtis or Pearson regarded plaintiff as being limited in a major life activity. Viewing the facts in the light most favorable to plaintiff, and hence assuming that Curtis and Pearson did in fact know of plaintiff's depression, a trier of fact could not reasonably find that Curtis and Pearson treated plaintiff as though she was limited in a major life activity. At worst, Curtis and Pearson perceived plaintiff as being unable to perform her work as a technical assistant; there is no evidence, however, that they regarded plaintiff as being limited in the major life activities of working or thinking. See Mack v. Great Dane Trailers, 308 F.3d 776 (7th Cir. 2002) (finding ADA claim failed as a matter of law because

10

"all the direct evidence about [defendant's] knowledge of [plaintiff's] physical impairment concerned lifting restrictions related to his job and there is no evidence from which a jury reasonably could infer anything about [defendant's] belief about the extent of [plaintiff's] limitations as to tasks central to his daily life"). Accordingly, the court finds that plaintiff has not established that she is covered by the ADA.

With respect to her Title VII claim, plaintiff has not produced direct evidence that establishes defendant discriminated against her because of her sex. Accordingly, to establish her prima facie case of discrimination under Title VII, plaintiff must show that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) other similarly-situated employees who were not members of the class were treated more favorably. See McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973); Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 1006 (7th Cir. 2002). Once plaintiff has met her burden, the employer must then produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. If the employer offers such a reason, the burden then shifts back to the plaintiff to present evidence that the employer's proffered reason is a pretext. Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 394 (7th Cir. 1998). Because the undisputed evidence undermines plaintiff's arguments with respect to both (2) and (4), and plaintiff has not demonstrated that defendant's proffered reason for her termination is pretextual, defendant is entitled to summary judgment on plaintiff's Title VII claim.

Plaintiff does not dispute that her supervisors repeatedly admonished her for poor performance. Although the frequency of these discussions is disputed, plaintiff repeatedly

11

acknowledged in her deposition that Kohn, Curtis, and Pearson all voiced concern over certain aspects of her performance, including her lack of organization and inability to reconcile her American Express statements. Plaintiff does not dispute learning of these criticisms as early as November 18, 1996, when she received her PAR from Kohn. That Curtis and/or Kohn may have described plaintiff's performance as "satisfactory" in their PARS does not somehow invalidate their criticisms of her performance.

Moreover, plaintiff does not dispute that Pearson's 1998 PAR indicated that she needed improvement and that her performance was unsatisfactory, and that these comments were echoed in her October 1998 meeting with Curtis. Similarly, although plaintiff disputes that she and Curtis had any meetings in December 1998, she admits that "the December meetings primarily focused on repeated mistakes and errors that [plaintiff] made in submitting travel vouchers for certain department members' travel arrangements." Further, plaintiff does not dispute that her procurement card was suspended and that this prevented her from performing at least some of her job responsibilities, such as buying gift checks. On this record, the court concludes that no reasonable trier of fact could find that plaintiff was meeting her employer's legitimate expectations at the time of her discharge.[3]

---

[3]Plaintiff attempts to minimize these undisputed performance deficiencies by asserting that defendant should have implemented a PIP before firing her. Plaintiff, however, has not provided competent evidence that implementation of a PIP was mandatory prior to termination, at least within ONG. Indeed, plaintiff's affidavit states only that it is her "understanding" that PIP's were mandatory, without stating a reliable basis for this understanding. Moreover, plaintiff's attachment of thirteen pages of printouts of purported personnel guidelines, without any specific references to the text therein, do not aid the court's analysis. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996) ("It is not [the court's] function to scour the record in search of evidence to defeat a motion for summary judgment; we rely on the nonmoving party to identify with reasonable particularity the evidence upon which he relies.").

Even if the court concluded otherwise, defendant would still be entitled to summary judgment because plaintiff has not produced evidence tending to establish that similarly situated male employees were treated differently. To demonstrate that another employee is "similarly situated," plaintiff must show that there is someone who is directly comparable to her in all material respects. Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002). In satisfying this burden, the plaintiff ordinarily must show that the two employees dealt with the same supervisor and were subject to the same standards. Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-618 (7th Cir. 2000).

The only two male employees identified by plaintiff, Klein and Sturdivant, were not similarly situated for the purposes of Title VII. Klein was in a different department, with a different supervisor. Sturdivant, although in the same department as plaintiff, was an engineer, rather than a clerical employee, and hence subject to different job expectations and performance standards. Moreover, Sturdivant did not in fact receive a PIP before being fired by defendant. Accordingly, the court concludes that plaintiff has not produced evidence demonstrating that there existed similarly-situated male employees who were treated more favorably than she was.

Last, even assuming that plaintiff had established a prima facie case, she has not offered any evidence to rebut defendant's contention that it fired her for unsatisfactory performance. Plaintiff does not dispute that defendant was dissatisfied with her job performance and communicated this fact to her on several occasions.

Moreover, plaintiff cannot point to any evidence of discriminatory animus underlying defendant's actions. Indeed, it is worth noting that Curtis, who fired plaintiff, was the same individual who hired her back in 1996. Although not determinative, this fact significantly

13

undermines plaintiff's claim of animus. See Iovin v. Northwestern Memorial Hosp., 916 F. Supp. 1395, 1406 (N.D.Ill. 1996) ("The Seventh Circuit has noted on several occasions that where the same decision-maker that hired the plaintiff is also alleged to be the discriminator, an inference of nondiscrimination arises."). Accordingly, the court finds that defendant is entitled to summary judgment on plaintiff's Title VII claim, as well.

## CONCLUSION

For the reasons stated herein, the court grants defendant's motion for summary judgment in its entirety. The court's prior orders setting this case for trial and for a status report are vacated.

**ENTER:** November 20, 2002

Robert W. Gettleman
United States District Judge